Please all rise. Hear ye, hear ye. This Honorable Appellate Court for the 2nd Judicial District is now back in session. The Honorable Robert D. McIron presiding. Please be seated. Your Honors, the second case on the docket this morning is 2-22-0291 Western Lake Check Cashiers, LLC plaintiff Appellate v. Propane Pete, LLC doing business as Kangaroo Propane, thank you for coming. Arguing plaintiff's counsel, Mr. Peter Usharovich. Arguing plaintiff's appellate, Mr. David Joseph Franklin. Is it Usharovich or Usharovich? Usharovich. You may proceed, Mr. Usharovich. Good morning to the court. Good morning. This is a simple case about a check which was cashed twice. Essentially the facts aren't in dispute. I'm sorry, was it cashed twice or was it negotiated twice and not paid twice but paid only once? Because if it was paid twice, why would you be here? Well, it was negotiated once by being deposited the first time electronically. In which case the bank, the drawer's bank, paid that check. Then immediately after being deposited electronically, it was then presented and negotiated to the currency exchange who then gave something, we don't know the exact value, but they said that they gave something in return to the party that presented the check to the currency exchange. Did you notice that currency exchanges require a fee to cash a check? I wouldn't say that they may require a fee, but we don't know the actual fee or what they pay for it. But you would agree it's a matter of common knowledge that currency exchanges charge a fee? Correct, to charge for the check, for cashing. Right. Would you also agree with this statement that it is sometimes said that the holder in due course doctrine is like oil in the wheels of commerce and that those wheels would grind to a quick halt without such lubrication? Would you agree with that statement? That's from White and Somers, the treatise on the Uniform Commercial Code. I would say that that statement exists. Mr. Somers is probably much brighter than I and well-versed. He's got treatises, so I wouldn't be able to disagree with that. Let me ask you this. In the Code, Section 3-302B, would you agree that it provides that notice of discharge of a party other than discharge of an insolvency proceeding is not notice of a defense under Subsection A, but the discharge is effective against a person who became a holder in due course with notice of the discharge? There was no notice of the discharge to the plaintiff in this case, was there? No, I don't believe there was. Then why doesn't Subsection B blow you out of the water? Well, I'll explain to you why. Subsection 3-305 is actually the one that deals with this section for the most part. And what I mean by that is Article IV defenses, this is a different defense. Having notice of the discharge, right, just affects the status of a holder in due course. It's not necessarily the defenses. And what we mean by that is Article IV is a defense where if the check is actually accepted by the bank, it's paid. And then when you go to Article III, it says Article IV defenses, they're not trumped in a sense because 3-305 Subsection A-2 states other defenses that pursuant to Subsection B are cut off by a holder in due course, right? These defenses compromise those specifically stated in Article III, and those are based on common law contract principles. Article III defenses are non-issuance of the instrument, conditional issuance, and issuance for a special purpose. Failure to countersign a traveler's check, modification of the obligation by a separate agreement, and payment that violates a restrictive endorsement. Instruments issued without consideration or for which promised performance has not been given, and then there's breach of warranty when a draft is accepted. The most prevalent common law defenses are fraud, misrepresentation, mistake, and the issuance of the instrument. So while having notice of a discharge can affect the status of a holder in due course, and if they don't have notice of it, they're still a holder in due course, this holder in due course is still subject to that Article IV defense of acceptance and discharge. Do you have a case that says that? No, unfortunately, the only case that you cite is the New Jersey case, but that New Jersey case, in that case, Triffin versus SIA slash IS, they didn't even maintain that they were a holder in due course because they were not. They purchased, decided checks. Right, whether they were a holder in due course or not, that's the issue that I just said. That's distinguishable from the facts of this case, right? Not necessarily. And why not? And I'll get to that part. The reason why is the holder in due course status, even if they have notice of the discharge, they can't really become a holder. They have notice of this discharge, right? That's what it's saying. They can't become a holder in due course. But what we're saying is that the defense of acceptance by the bank is an Article IV defense. Therefore, under the Section 305, it still applies because that section states, that section states that, one second, that section states that a defense of the obligor stated in another section of this article or a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right and payment under a simple contract. Right? Those defenses are available here against a holder in due course. Moreover, because the check was already cashed, there's no legal capacity. So we would argue that A-1 also applies. So what we're saying is that even in Triffin, the court did all the work in Triffin for this court, I believe. The UCC code is the same there. They apply the same statutes. And the only lacking thing, like Your Honor said, is that in Triffin, there's no mention of holder in due course. Because they knew that these checks had been dishonored. There's no evidence in this case that the plaintiff knew that the check had been cashed electronically. Right. But what we're saying is whether they had notice or not of the dishonor, right, or I'm sorry, whether they had notice or not of the discharge, when they purchased dishonor checks, they had some notice. There's no argument for a holder in due course. But what we're saying is even if they are a holder in due course or they're not, the Triffin court applies because the defense that we're citing is an Article IV defense, and it's not precluded by Article III. So the holder in due course is subject to defense. It's much like this. Even if a holder in due course had notice or didn't have notice, they're subject to the gambling defense, for example. That's a super defense. The comments to Section 302 state that, and they make clear, that discharge is effective against anybody except a person having rights of a holder in due course who took the instrument without notice of the discharge. Correct. But you're saying in spite of that language, in spite of 302, and you're not contesting here, although you did in the trial court, you're not suggesting that the plaintiff was not a holder in due course, are you? No, we argued that the plaintiff never proved they were a holder in due course by establishing what specific value they paid because nominal value for a check could be considered not good. They were beyond that. Your argument is that we should follow Triffin. Correct. Despite the fact that in Triffin they were not holders in due course. Yes, and I just explained why. Because the defenses that are precluded for, one second, I've got to pull up the statute again. See, it says the right of a holder in due course to enforce the obligation of the party to pay the instrument is subject to the defenses of the obligor stated in Subsection A1, but is not subject to the defenses of the obligor stated in Subsection A2 or claims in recruitment. But so what we're saying is that if you're saying that the check had a box, the box wasn't marked or checked, but the box was what you are arguing, which was it would have given the holder in due course or the plaintiff in this case notification that the check had been discharged because that's what the box said, but the box wasn't checked, correct? Correct. So how can you, if you don't check the box, indicate when you are supposedly depositing a digitized copy of a check and you don't mark on the printed original copy of the check that it has been discharged, how is a holder in due course, short of using a medium, going to find out that they're not a holder in due course? Well, what we're saying is whether they're a holder in due course or not, the drawer's liability is discharged upon acceptance by the bank. Let me ask you this. Is that a common law concept? No, if you interpret the statute that way, that's what the statute says. So the statute allows for a double deposit based upon what you're arguing. No, the statute allows, what happens is the double deposit occurs, not because the maker didn't check the box, but the person who endorsed it cashed it over. So the maker, the drawer, is discharged, and the only claims then by the party, sorry. No, go ahead. The only claims then would be by the currency exchange against the person who gave it to them. But our liability as a drawer is discharged upon payment. That's why that statute says it there in Article IV. Section 601B provides that discharge of a party's obligation does not impact a holder in due course who has no notice of the discharge. Correct. But by what? But then you have Article IV that says a drawer is discharged upon acceptance. So what we're saying is that you have a section that says a drawer is discharged upon acceptance. Whether there's notice or no notice, there's no requirement for it. The legislature specifically said once it's accepted, the drawer's liability is discharged. Then it goes on in the next section and says once it has to endorse their liability. Once it's accepted, that endorser liability is discharged. So what it's saying is that there's other defenses that can be, like it says, that can be cut off by a holder in due course. But this is one of those defenses, like the gambling defense, is a super defense to a holder in due course. Isn't a holder in due course subject to only personal defenses? Well, I believe, yes. But how is this a personal defense here? This is a general defense that you're suggesting. Well, no, this would be the personal defense of the drawer. And what I mean by that is the drawer is automatically by statute taken out. The legislator said once there's acceptance, he's gone. And that's what the TRIFING case stands for, whether there's a holder in due course or not. The legislator specifically wrote in a separate section after that. Your argument essentially then, if I understand correctly, is that the person who wrote the check is off the hook, but the person who negotiated the check the second time is on the hook. Correct. Because they're the ones that made those warranties and lied. And they breached all those warranties. When my client issued the check, there was money in the account. He was authorized to issue the check, and he didn't breach any warranties. When he gave that check to the employee or the contractor, that person then deposited it. The bank accepted it, and my guy is off the hook. And that's what Article IV says. So it creates... And this is based upon common law principles, isn't it? No, statutory. No, the statutes are essentially making history of common law. You may say that it's a statutory enactment, but it's based upon the common law. I'm not going to disagree with your argument on that. Okay, let's do it this way. Is it consistent or inconsistent with the common law, the statute? Well, I can't answer that one. I'll answer it for you. In common law, people didn't have digitized checks. They had one document. And the idea was that with the one document, if that document has been paid, then nobody should have to be covering it for a second negotiation of that, even if the thing is forged. But now, in the modern age where we come up with digitized checks, instant deposit, which I've always been somewhat skeptical of for the exact reason you're here today, is because if there are two documents that are capable of negotiation and payment doubly, or maybe even triply, because after it was... Well, maybe not. But let's say it just twice. The policy then becomes, who's going to be liable? Is it going to be the holder of due course that's going to have to go against this nobody or the person who made the warranties, the criminal, so to speak, who negotiated it twice? Or are they going to be able to go against the maker? Well, was the common law you go against the maker, or was it in common law you go against the forger, so to speak? Well, I think it was against the forger, and I think that's what equity would require generally. I mean, courts are generally built off of equity. That's where it comes from. Fairness, justice, principles. Is there any case authority for that kind of stuff? The only case that I found was Triffin. And that was the only case, and I went through the whole country. That was like the only case. And they applied the same ECC that we have here, the same cult, to find that this person wasn't liable for acceptance. And going back to the argument that you just said, even if it's not an electronic error, let's just say the person made two copies of one check, right? Gave one to a bank, right? And then gave one to the currency exchange. Same check, but copied it and signed it, right? When the original one's paid, the maker's off the hook, and now the forger who gave the second check is the one that's there. So whether it's remote or not or electronic, you have someone creating a fraud that went beyond the confines of what the drawer actually said should happen. And there was nothing the drawer could do about this because the drawer is not the one that marks the box that says electronic deposit. So for all intents and purposes, what the legislature says in the UCC code is that once the check is accepted, the proper defendant cannot be the drawer. It cannot. You have to go after the endorser. Could you define what two copies are? Well, two copies in terms of what I just said, the example? Well, I'm having this aphasia, this confusion over the concept that two copies are the equivalent of two originals. Well, what I'm saying is that, say, for example, I had one check, check number 001, and I went and created a copy of it, right? A Xerox or? A counterfeit. Let's just say a counterfeit, just like counterfeiting a dollar, right? But this one is a good counterfeit. Okay, then it's actually what you really are meaning is there's one original and one copy. Correct. And so if the original is cashed, let's just say this, right, whichever way it's cashed, the guy's dead set, the drawer's off the hook, because the subsequent one was a check that the forger issued and created, not one that the drawer actually made. And so what we're saying, and Section 3 supports that, because it says all defenses are holder in due course is subject to all those defenses in A1, but not A2, right? But A2 says defenses of this article, right? And that's Article 3. Our defense comes from Article 4, but I wouldn't say it's necessarily a defense. It's more of who can be a plaintiff. It authorizes who you can sue. And here the legislator said once the check is accepted by a bank, and whether it was electronic or not, it just says once it's accepted by a bank, that person's off the hook. Your time is up, but do you want to just very briefly address the issue of attorney's fees? The attorney's fees are usually given under two provisions, like if there's a dishonored check for insufficient funds or if there's this breach of these warranties. When my client gave that check, all the warranties, my client breached no warranties. He was authorized to sign it. He was authorized to negotiate it. There was money in the account. It wasn't returned for insufficient funds. It was returned for duplicate presentment. That's not covered under the statute. The person that actually breached the warranties was the endorser or the person who negotiated to a currency exchange. And as we know, attorney's fees can only be given by statute, right, or by contract, or the court has inherent authority to give it during a fraud or something perpetrated in fraud. And that's even disputed too as well sometimes. But here there was no basis, no statutory basis, no contractual basis, and no equitable basis to give any of the attorney's fees. Any other questions? No. Thank you. You have an opportunity to make rebuttal. Thank you, Your Honor. Mr. Frankel, you may proceed. Thank you, Your Honor. Mr. Frankel, counsel for the defendant says it doesn't matter that the plaintiff was a holder in due course. Obviously. The four defenses apply. Obviously. I respectfully disagree with that. I would like to make light of one thing that counsel did. Speak up, please. I'm sorry. I would like to make a response to one comment that counsel made based on This is exactly what we have here. And I think counsel just proved my point for me. Counsel, if I understood him correctly, stated that if the original check is cashed, the original check can be enforced and the copy cannot. And that is exactly what we have here. My client took the original check with no markings, no indications that it had been mobilely deposited by the payee. If my client had taken a copy, then we wouldn't be here and my client wouldn't have filed suit because my client would not have been a holder in due course because it would have been either facially invalid or it would have been dishonored by reason of it being an altered, fictitious, or counterfeit item, which is one of the reasons that a bank on a return of advice will notify a check casher as to why the check has been dishonored. How does the Check 21 Act apply in this case? The Check 21 Act applies in this case only tangentially, Your Honor. And the reason it is illustrative is for the following reasons. Number one, in the Speedy v. United States Postal Service case, Judge Bucknell made it very, very clear that the creation of a substitute check for purposes of mobile encashment does not eliminate, terminate, obviate, or supersede a holder in due course's rights with respect to the original instrument. There's nothing inconsistent then in Check 21 with the UCC? No. In fact, the Check 21 Act, fortunately or unfortunately, depending on which side of the fence you sit, kind of addressed this issue. By all acknowledgements, under the Check 21 Act, when somebody does a mobile deposit, that creates a substitute check, which has the same legal effect as the original check for purposes of the mobile encashment. So I take a picture of the check. I deposit it electronically at my bank, at Bank of America. Bank of America then negotiates the check to the maker bank. The maker bank then, by virtue of creation of the substitute check under the But that has nothing to do with the original check. In this case, when this happens, the substitute check is honored. The original check is not. And the original check is the only item that's presented to my client, that's cashed by my client, that's paid out by my client, and is dishonored by my client. So my client still has the right to enforce the original check because the obligations for the original check have never been discharged. Was the original check made part of the record? Yes, it was. And it had an amount on the face of it? Yes, it was. Yes, it did. Sorry. So would you argue that the face of the check was sufficient consideration for being a holder in due course? Absolutely. It's one of the elements. The elements of a holder in due course are taking the check for value, which was established at trial, in good faith, which was established at trial, without notices of discharge claims, defenses. If the box had been checked indicating that it had already been negotiated, would your client have been acting in good faith? Absolutely not. Not only would my client have been acting in bad faith if the box had been checked, but because of this issue and the pervasity of mobile encashments, my client's across the board policy and procedure is they do not, under any circumstances, cash checks unless that check is endorsed in their presence. And he negotiated the check. While doing that, he also signed up as a new customer, right? I believe that is correct, yes, which is common. So on page 9 in your brief where you say, defendant's assertion that its obligation with regard to the original check was discharged upon encashment of the substitute check is inconsistent with applicable statutes in case law. You've just described the case law and the statutes, correct? Yes, Your Honor. And furthermore, the Hatton v. Moneylenders case makes clear that the time to determine a check casher's holder and due course status is at the time the check is presented for payment over the counter. So if the check that's presented to the currency exchange is facially valid, it's not preendorsed, it's not something that was created on Photoshop or Acrobat or one of those fancy computer things that I'm admittedly not familiar with, and they pay out on it, and I'll address Justice Burkett's inquiry about service fees in a second, then my client is a holder and due course at the time that the check is presented for payment over the counter. As far as fees are concerned, yes, currency exchanges are permitted to charge a service fee for cashing a check. However, that service fee is not within their discretion. Currency exchanges are regulated by the Illinois Department of Financial Institutions. The DFI sets the rates that can be charged as service fees for cashing checks, providing notary public services, paying your ComEd bill, buying Metro tickets. DFI controls everything as far as what a currency exchange can or can't charge. Attorney's fees and costs against propane peat. Sure. Under the UCC, when a party issues a negotiable instrument, they are warranting that that is a valid and enforceable instrument that will be paid. In this case, it was not paid. As such, under Section 53416B, by virtue of propane peat issuing that check and putting it out into the stream of commerce, as long as my client is a holder and due course, they're entitled to recovery under 416B. Well, did your client fail to check the box? My client wouldn't check the box. Who should have checked the box? The payee should have checked the box when they did the mobile encashment. Well, if the payee, Mr. Jones, should have checked the box, then wouldn't it sound or wouldn't the conclusion be reasonable that he was the one who breached the warranties, not your client? No, and I'll explain why, Your Honor. My client had no notice of the mobile encashment. Not only was the box not checked at the time the check was presented to the currency exchange, the check wasn't endorsed. Mr. Jones, however he did it, affected a mobile deposit through his bank and then brought a clean copy of the check to the currency exchange to cash. That is part of the record. The complaint is attached to the complaint, and it's also part of the record. And this happens all the time. And there's a nice little trick if you want to put things in action. Your Honor, that is an additional fact. The problem is, let's assume that Mr. Jones, because he failed to endorse it, failed to make a warranty, correct? Is that your argument? No, that is not my argument. Mr. Jones did endorse the check. Did he or did he not fail to warranty the check? He didn't have to. No, he doesn't have to. The maker warrants. Well, if he did, then who did? The maker. By issuing the check and placing it in the stream of commerce, the issuer of a that check will be valid and enforceable. Then it was, wasn't it? You got your payment. No. We wouldn't be here if my client got paid. My client didn't get paid. So what happened, if I can get... How is it that the defendant was supposed to be present at the time of the second negotiation and an agent of your plaintiff then should have either told Mr. Jones to check the box or the agents should have checked the box, but that didn't happen, correct? That would not happen in the transaction-related currency case. So somebody didn't warranty that the check had not been already deposited. Now, it's either you or Mr. Jones or possibly an act of God. Or maybe I should say an act of the devil. But the point is, is that if you're going to assess fees against his client, how have you established that his client was in a position to check the box when I don't think the record reflects that it was? And if it wasn't in a position to check the box, how was there a breach of a warranty relative to, as you had pointed out to us already, you wouldn't have negotiated and paid consideration for it if that box wasn't checked. Pardon me, if it was checked. So if it wasn't checked and you paid out, who breached the warranty? You're telling me that the defendant did? No. And don't give me the same argument about he guaranteed payment of the check. Because as you told us previously, you wouldn't have paid the check unless the box was empty. And the check was unendorsed at the time it was presented for payment, correct? Now, do you see where I'm going with this? I do see where you're going. Why are you entitled to fees when, under the circumstances where we have now, an Airstops original and a real original, that the real original is in the hands of the holder in due course, but that doesn't necessarily mean that the party that drew the check is necessarily guilty of a breach of a warranty. Now, if they had claimed that they didn't write the check and that the check is a forgery, I might bar your argument that maybe attorney's fees and costs should be assessed because of Rule 137 or something. But if they didn't write the check, how can they be guilty of a breach of a warranty? Because, respectfully, Your Honor, Propane Pete did write the check. I'm sorry? Propane Pete did write the check. Okay. They wrote the check but did not present it. They wrote the check, gave it to their payee. Their payee did a mobile encashment and then presented the original check without giving any notice that there was a prior mobile encashment of the check. I've been beating around the bush relative to the warranties that, from what I can tell, Propane Pete hasn't made. So would you address the issue of whether or not you're entitled to fees and costs and so on? Yes. In the course of the transaction. Go ahead. I'm sorry. I'm done. I just wanted him to speak, so if you want to ask him a qualifying question, that's fine. Go ahead. So 416A says that a person who transfers an instrument for consideration warrants to the transferee and if the transfer is by endorsement to any subsequent transferee, that the warrantor is a person entitled to enforce the instrument. That warranty has been made by the issuance of the check and tender of the check to the payee. Subsection 2, all signatures on the instrument are authentic and authorized. I don't think there's any factual dispute that Propane Pete issued this check and a duly authorized representative of Propane Pete signed the check. Subsection 3, the instrument has not been. Jones is a duly authorized representative. No, this is the warrantor. This would be the maker, Your Honor. This wouldn't be Mr. Jones. There's two different warranties at play here. Don't the warranties under 416 concern Jones, the transfer of the check, not the defendant's? It depends how Your Honor wants to define transfer of warrants. There's two transfers at play here. It's the one person. It's the person, basically, to borrow a phrase from Wayne Summers, a name, Scallywag Jones here. It's the Scallywag, not the defendant. Scallywag Pete. I would argue, Your Honor, that Propane Pete makes the warranties just like any maker of a check makes the warranties when they issue a check and place it into the stream of commerce. If I write you a check, Justice Burkett, and something goes wrong with that check, you're coming after me. Don't write me a check. I won't. I do ACH. I do want to make one illustrative point for the panel's consideration also. There has been some reference and mention of the Check 21 Act and what warranties are given under the Check 21 Act, and this is important. As Justice Bucklow stated, under the Check 21 Act, when there's a mobile encashment, it creates a substitute check, and that is the check that was honored vis-a-vis Propane Pete. The original check was the one that was cashed at the currency exchange and was not honored. And the Check 21 Act has taken this into consideration, albeit admittedly not the way I would like the federal legislature to have considered this issue. Under the Check 21 Act, the bank of first deposit, the bank that accepted the mobile encashment, owes warranties. The problem is they owe those warranties that they're not going to allow this exact thing to happen to the maker, not to the currency exchange. And while my personal opinion and the opinion of the currency exchange industry, and they fought tooth and nail for this in the federal legislature, and their infinite wisdom chose not to include it as a warranty under the Check 21 Act, those warranties don't run to the currency exchange. What makes it even worse is when the currency exchange cashes a check that they have no idea it's been mobilely deposited, how are they supposed to know, number one, that there was a mobile encashment, and number two, who the bank of first deposit was where the mobile encashment occurred? That only shows up in one place, and one place only, on the maker's bank statement. Well, maybe Congress and the General Assembly will address these issues. We've tried and tried. For now, it's the cost of doing business, right? The cost of doing business to a maker that issues a check that's cashed twice by their payee, yes. Is there any, I mean, can someone in propane, Pete's position, put on the check, cannot be, cannot become mobilely or? Deposited electronically. I'm so glad you asked that question, Your Honor, because I get that question from makers who call my office yelling and screaming all the time, and my answer is very simple. In this electronic world, you know, everyone knows that this is a risk, and yes, you can safeguard yourself in one of two ways. Number one, there's this great invention called ACH. Yes. But for situations where ACH is not available, the banks do offer the option to pretty much put whatever you want on your standard check stock, and if you put on your check stock this item not eligible for mobile deposit or this item not eligible for mobile encashment, that puts an end to this. Or if it's printed up with a box and a box already checked, what about that? Well, the box would be checked. The way it's supposed to work is if I want to mobilely cash a check, I have to endorse it, and I have to check the box. And you send a photograph of it to the bank. So what happens is I take a picture of the front of the check on my phone. I then flip it over, and I take a piece of clear tape, or I take a piece of paper, and I just put it in the endorsement section. I take my picture. I do my mobile deposit, take off the piece of paper, and I check the currency. I'm saying when the drawer executes the check, they use something like a magic marker to mark the box, so that when the check is given to whomever, the box is already marked, which means it cannot be digitally deposited. No, that would mean that it has been digitally. The box means it has. It means it already has been deposited. Well, the box solution obviously is impractical. No, because that would be a restriction on your ability to cash checks in other manners. I was going to talk about magic ink, but I don't think we have time. Thank you, sir. That was another option. Thank you. Thank you. I also thought about the possibility that you could talk to whomever sets the rates for your fees and possibly incorporate an estimated loss for the number of bum checks to cover via this rate increase. If Justice McClaren would like to have a side gig with the Currency Exchange Association to lobby the Illinois legislature, I would be happy to discuss that with them. Thank you. Yes. Mr. U. Sharovich, where does it think? Sharovich. I wish I could change it. I probably could spend about 1,000 days of my life spelling this name. Okay. Sharovich. You can be like Barney Miller's associate when he says his name. It's a very long Polish name. And somebody says, how do you spell it? He says, just like it sounds. How are you Russian? I was born in Crimea, so I don't know what I am, unfortunately. But I know I'm an American. So that's all I know. But, yeah, it's very interesting because where I was born, I was born in the Soviet Union. That's gone. It then became Ukraine. That's now gone or in dispute. Now it's the Russian Federation. And it's just, you know, so I'm glad I'm an American. Let's put it that way. Mr. Sharovich, can you address counsel's reliance on the Speedy case? Yes. The Speedy case dealt with preemption. And it's really not applicable here because it dealt with a claim of the post office under federal preemption, and it was a motion for summary judgment. So it really didn't decide anything except for deny a motion for summary judgment. It didn't make any actual final legal findings. It just said that they affirmed the denial, I believe, of the motion for summary judgment. You agree we can look at it as persuasive authority, though? Correct. But I think Triffin is much more persuasive than Speedy because it's more on point. You don't have a post office, which is somewhat of a federal entity, versus a check cashing place. And we're not asserting Check 21 acts. But even if you rely on Check 21, the main issue is that Check 21 requires a substitute check to be treated as the legal equivalent of the original check. And if such substitute check were the original check for purposes of 341C. So, hence, once the substitute check was accepted by the bank, the original check must be treated as accepted. And that's because it says it is the legal equivalent of an original check, and the substitute check must be treated by law if it's the original check. The federal code provides that a substitute check shall be the legal equivalent of the original check for all purposes and for any provision of any federal or state law. So, for our provisions of state law that we argued today, when the check is accepted electronically, right? It doesn't matter whether it's a substitute or an original. And the code doesn't say that. The UCC says if the draft is accepted, this draft was accepted. Whatever form it was in, it was accepted. And the drawer is discharged. And the federal law supports that. So, even if you take the plaintiff's position on Check 21, it only supports our position and says that the substitute has to be treated as the original for all purposes, federal or state law. So, when we apply the state law, we see that there's no distinction. It's the check. Why do you think there's no case law on this point? It must have happened thousands of times. I mean, literally thousands of times. I mean, the reason... Tens of thousands of times. Why do you think the reason is that there is no case law specifically on this point? Well, I think that... Would it be because commerce would come to a screeching halt? No, no. I think that partly most of... Maybe the currency exchange... The reason why is the currency exchange has standards. And they don't take $20,000 checks from a Chris Jones that they just met. They take small checks. And while people can say bad things about currency exchanges, they do help a lot of people who can't have access to banking systems. A lot of people, especially in today's economy, are living literally paycheck to paycheck. They don't have bank accounts because they don't have enough money to establish an account. Right. The currency exchange industry is vital to commerce. It's vital to commerce. It's vital to socioeconomic standards. It's vital to people who can't access banks for whatever the reasons are, be it that they don't have a social security, or be it that they've been banned from banks, or the fees are too expensive, or they just can't access a bank because there's none in their neighborhood. So I agree that the currency exchange... But they deal with checks that are small, right? So part of the reason you don't have a case with the same faxes, you don't have lawyers that are willing to take it up over a $1,000 check. And here, this is purely for, and counsel will agree, this is more or less purely for the legislation in the spirit of the law or the principles of justice, not so much monetary, at least on our end. So it's pretty obvious that the attorney's fees are going to far exceed whatever the damages were. Well, in a sense, potentially. But the point that we're getting at is that the reason I don't think we have a lot of these cases is what I just told you. They're small amounts, and I don't think people want to invest the amounts of money that are going in. And, you know, I also think that this may not happen that often, as people do think it does happen, but we do need something to guide the state of Illinois. And I think that TRIFIN is the best way. It's been done by the court, and the only issue there is the hold or due course part. But like we said, if you look at Article 4, it says that the drawer is discharged, and that's what it says. So in Article 3, the section in Article 3 says that the defenses in A2 are not available, right? If I understand your argument correctly, then, if that defense is valid, then a holder of due course has to hunt down the negotiator rather than the drawer. No, there's another way to do it. They can hunt down the first deposit bank, right, the bank of first deposit, and the person that gave it, which is rightfully so. You have to hunt down the fraudster. Why should the fraud lie on the innocent party? We don't do that, not in negotiable instruments, not in property law, nothing. When there's a forgery or a fraud, that's the way we don't punish the innocent party who had nothing to do with it. And I know my time's up, but going back to the warranties part, and I just want to address that, my client didn't breach any of those warranties. All those warranties were not breached. The problem was duplicate presentment, and that wasn't a specific warranty in there, and my client never transferred that check to anybody. He issued that check as part of payment, and that person then transferred and endorsed that check to the currency exchange. So my client breached no warranties, and there was no basis to assess attorney's fees against my client. Again, it's just out of convenience, I feel, that the currency exchange sues the drawer because they know they have an account, they see what's there, but really it has to fall on the person that committed the fraud. You can't punish an innocent person, and the law never prescribed for punishing innocent people. And there was nothing my client could have done to prevent Mr. Jones from doing that except for having some foresight or ability to see forward or be a mind reader to see what this person's going to do. And again, if the Check 21 Act was designed to speed up commerce, which it was, to make things go faster, so we have digitalized checks, the clearinghouses are going fast, it would slow down commerce if we lost that ability to utilize remote deposits by having to check these and saying, well, this is not for electronic deposit, not for electronic deposit. That would forego our modern legislation and what was done. So there should be something, and we believe that the Triffin case is the one that should apply, and that holding should apply to this case. But if we're going to change the law, and that's essentially what you're asking us to do, your New Jersey case doesn't have the same facts, doesn't have the same situation, because we don't have the issue of the holder of due course. Like I said, whether it's a holder or not, that Article IV defense applies. Once it's accepted, the drawer is discharged, and that's what the UCC says. So it's not so much a defense or anything, it's a standard of liability. When was Article IV placed into the law? I'm sorry? When was that enacted or legislated or formulated? The defense that you're talking about. It's been enacted quite some time. I don't know the statute. 1962, I believe. Okay. That explains a lot. I can't answer that, except I didn't look at when it was enacted. Well, when we talk about legislative intent, in the 60s I don't think there was the ability to double dip with a digitized, substitute, legally sufficient document. There was only one document, the original. Everything else wasn't. And so based upon the context and the historical intent of the statute, your argument fails, because you are essentially not paying attention to the context of the enactment at the time it was enacted. And so if we're supposed to interpret the context, then we should, by implication, put into that defense that as between digitized copies and originals, it's the original upon deposit that will prevent the digitized copy from being honored, instead of the other way around. Well, I just have two brief responses. The first one is the First Amendment never considered a computer or a MacBook or any of those things. And our founding fathers, when the framers of our Constitution wrote the First Amendment, they were talking about quills, newspapers, and newspaper presses. But to this day, we apply the First Amendment now to what? Text messages. We apply it to digital computers, to digital books. So the fact that something digital didn't exist then, we're looking at the spirit of the law. And the spirit was to apply it to say that when one thing is accepted, the draw is gone. You don't have to worry about it. That's a nice argument, except that I don't think it fits, because I'm applying the context then versus now when there is a question about, as between opposing parties, who is supposed to be protected. And so you are doing the same thing, but you're flipping the argument, because you're claiming that the parties to be protected are the same parties that were protected under the First Amendment. And therefore, all the things that derived therefrom should also apply. And you're correct. If you use your syllogism like I used it, then it's the original, the real live person who's supposed to be protected. Not corporations, not banks, relative to the digitized aspects of communication. Your argument is well taken, it's just that I think the conclusion is wrong. Well, I had part two, and the part two is this. The federal courts supplemented that context by stating the duplicate or the substitute check is to be treated as the original check. And I can buy that argument in the context of what it was. And that is, is that between the parties who had touched that document should be bounded by them. But parties who are not touched by them should not be. And the logic of your argument, in my personal opinion, is if we were to accept your argument, there would be no more holders in due course, period. Because the holder in due course is the one who is holding the original document. The substitute document only becomes inter vivos if it is actually treated as such and made a digitized deposit. The check that was drawn has always existed, but not the digitized check that was deposited. Right, right. I see what you're saying, Judge, but I'll point, and I think I've already addressed that part. We're getting into philosophy of law now. Well, we're also getting into being a legislator. I'm not one of them. Excellent arguments. Any other questions? No. Panel. We will take the case under advisement and render a decision in half time. Thank you.